No. 24-8031

# In the United States Court of Appeals for the Tenth Circuit

AMANDA MCDADE,

*Plaintiff-Appellant*,

v.

WESTON COUNTY HOSPITAL DISTRICT,

*Defendant-Appellee*,

On Appeal from the United States District Court for the District of Wyoming
No. 1:23-cv-00232, Hon. Scott W. Skavdahl

## BRIEF OF APPELLANT

CASSIE CRAVEN
LONGHORN LAW LLC
109 East 17th Street, Suite 223
Cheyenne, WY 82001
Telephone: (307) 823-3062
cassie@longhornlawllc.com

*Counsel for Plaintiff-Appellant*

JULY 15, 2024

**\*ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF RELATED CASES ....................................................................v

INTRODUCTION.................................................................................................1

JURISDICTION...................................................................................................2

ISSUES................................................................................................................2

STATEMENT OF THE CASE .............................................................................3

    A.    Facts .........................................................................................................3

           1.    The Hospital's administrative and leadership team tried to have Ms. McDade placed into an involuntary psychiatric hold in an institutional facility against her will after she blew the whistle on financial practices which she believed to be unethical.........................................................................................3

           2.    The Hospital regarded Ms. McDade as disabled, when she was not..................................................................................................4

           3.    The Hospital committed a series of individual acts that considered together, were unlawful and severe, creating an abusive work environment and the evidence thereof is plausible and recorded. ...................................................................5

           4.    While the Plaintiff may not have a formerly designated disability, she brought a claim under the ADA because if the Hospital believed her to have a disability they should have accomodated it in another fashion short of involuntary commitment or alternatively the Hospital never genuinely believed her to be "manic" and instead used that label in an effort to threaten and intimidate McDade through her physician and co-worker.................................................................6

    B.    Procedural History .................................................................................4

SUMMARY OF ARGUMENT AND STANDARD OF REVIEW .........................5

ARGUMENT ......................................................................................................6

    I.    Ms. McDade's employer obviously perceived her to have a disability, or alternatively used the guise of a suspected disability as

a coercion tactic after Ms. McDade blew the whistle on monetary ethics allegations against her employer ......................................................6

II.    Ms. McDade's employer constructively discharged her through its harassing conduct that shocks the conscious. The district court's dismissal of this claim cannot stand. The precedential impact is horrifying ................................................................................................11

CONCLUSION .................................................................................................14

ORAL ARGUMENT STATEMENT...................................................................16

CERTIFICATE OF COMPLIANCE ....................................................................17

CERTIFICATE OF DIGITAL SUBMISSION.......................................................18

ATTACHMENT:

April 19, 2024 Order of Hon. Scott W. Skavdahl, U.S. District Judge, Granting Def's Mot. to Dismiss (ECF 14).

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Adair v. City of Muskogee*, 823 F.3d 1297, 1306
(10th Cir. 2016)……………………………………………………………7, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)………………….....5

*Goodson v. DeJoy*. No 22-1338, 2023 WL 4782947, at *9
(10th Cir. Jul. 27, 2023) …………………………………………….……….1

*Hiatt v. Colo. Seminary*, 858 F.3d at 1318 (10th Cir. 2017)………………...13

*James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992 (10th Cir. 1994)………..13

*McCray v. McDonough*, 2023 WL 171927, at 4-5
(D. Kan. Jan. 12, 2023)…………………………………………………..8, 9

*Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115-16 (2002)……..12

*Payan v. United Parcel Serv.*, 905 F.3d 1162, 1171 (10th Cir. 2018)………12

*School Board of Nassau County v. Arline*, 480 U.S. 273 (1987)…………...9

*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)………………5

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)…………………….....9

*Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1365 (10th Cir. 1997)………...14

*Tran v. Trs. Of State Colls.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004)………14

*Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021)………….14

*Turner v. Phillips* 66 Co., 791 Fed. Appx. 699 (10th Cir. 2019)…………….....11

*Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243-44 (10th Cir. 2001)…...12

*Young v. Colorado Department of Corrections*,
No. 23-1063, (10th Cir. 2024)…………………………………………....6, 7

**Statutes**

42 U. S. C. § 12101….……………………………………………………..6, 7

42 U.S.C. § 12102 ….……………………………………………….6, 7, 8, 9

42 U.S.C. § 12112(b)(5)(b)… ….…………………………………………….5

29 C.F.R. § 1630.2(1)(2)……………………………………...........7, 10

154 Cong. Rec S8344 and S8347…………………………………………..10

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28.2(C)(3), Appellants state that there are no prior or related appeals.

# INTRODUCTION

Amanda McDade ("McDade") was an employee at Weston County Hospital ("Hospital") before she was constructively terminated after being subject to threats of involuntary psychiatric commitment when hospital officials accused her of being "manic" upon blowing the whistle regarding unethical monetary practices of hospital administration.

The question at the heart of this case is if the credible threat of an employer for involuntary psychiatric commitment upon the employee constitutes violations of the ADA and hostile work environment. The lower court avoided this inevitable question by applying the wrong law and ignoring the factual assertions in the complaint.

First, the district court fabricated obstacles to avoid considering the Plaintiff's hostile work environment claim, including the assertion that more than one hostile event is required in an improper analysis of *Goodson v. DeJoy*. No 22-1338, 2023 WL 4782947, at *9 (10th Cir. Jul. 27, 2023); ROA at 39. The shortcomings listed by the lower court do not prevent Plaintiff's claims from proceeding as a matter of law and Plaintiff Appellant requests a reversal as to counts 5-7 in her Complaint.

Rather than accept Plaintiff's allegations as true in considering dismissal, as the court must, the lower court treated these allegations as implausible. But they are

not. Plaintiff alleged a series of hostile conditions that culminated in the most egregious of all – using a sensitive physician-patient relationship to attempt to threaten, coerce, detain, control and scare the Plaintiff through an intervention from a physician employee with the sole goal of evaluating McDade for a psychiatric commitment. Thus, Plaintiff has pled viable claims for constructive termination, hostile work environment and violations of the ADA. This Court should therefore reverse the district court's dismissal of Plaintiff's claims in counts 5-7 of her Complaint.

## JURISDICTION

Plaintiff-Appellant McDade appeals from an order dismissing all of her claims entered April 19, 2024, by the U.S. District Court for the District of Wyoming. App. Vol. 1 at 4. The district court had subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332. In accordance with Federal Rule of Appellate Procedure 4(a), Plaintiff filed a timely notice of appeal on May 14, 2024. ROA, p. 3. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the trial court err in dismissing the claims for ADA violations, constructive discharge, and hostile work environment after the Hospital's administrative team and leadership tried to have Ms. McDade placed into an involuntary psychiatric hold in an institutional facility against her will after

2

she blew the whistle on financial practices which she believed to be

unethical?

2. Did the trial court err in holding that "regarded as" disability was not alleged

in the EEOC Charge of Discrimination when "regarded as" is specifically

embedded into the self-fulfilling definition contained in 42 U.S.C. § 12102?

3. Did the trial court err in its application of *Goodson* through its disregard of

the factual allegations contained in Ms. McDade's Complaint which are to

be accepted as true and were these facts plausible to constitute an abusive

working environment?

4. Did the trial court err in its conclusion that a Plaintiff with a "regarded as"

disability claim must show that an actual disability exists?

## STATEMENT OF THE CASE

A sound understanding of the issues in this case requires some familiarity with

the underlying facts (as alleged in the complaint) and the procedural history.

**A. Facts**

### 1. Ms. McDade was threatened with involuntary psychological commitment by her employer.

McDade's treating physician admitted their employer (the hospital) wanted

her to put Ms. McDade into an involuntary psychiatric hold because of belief by the

employer that she was "manic". Specifically, the Hospital's administrative and

leadership team used another employee doctor to attempt to place Ms. McDade in

3

an involuntary psychiatric hold in an institutional facility against her will after she blew the whistle on what she believed to be unethical financial practices. The Hospital regarded Ms. McDade as manic and disabled when she was not. The Hospital committed a series of individual acts that considered together, were unlawful and severe, creating an abusive work environment and the evidence is plausible and was recorded in its entirety.

The Hospital should have accommodated any perceived disability in an appropriate fashion, not a threatened involuntary psychiatric commitment. Alternatively, perhaps the Hospital never genuinely believed that McDade was "manic" and instead used that label in an effort to threaten and intimidate McDade. Both of these alternative theories were sufficiently pled and the facts were recognized by the lower court. Unfortunately, the lower court disregarded these facts and the undersigned requests reversal as to counts 5-7. ROA, p. 4-6.

**B. Procedural History**

Following the events described above, Plaintiff pursued an EEOC claim and later sued alleging various claims for the discrimination and harassment she faced. The district court granted Defendant's motion to dismiss these claims in their entirety on April 19, 2024. ROA, p. 4. The Plaintiff-Appellant Ms. McDade herein appeals specifically Counts 5-7 for constructive termination, hostile work environment and discriminatory discharge because of disability and/or perceived

need for accommodation in violation of the ADA. See Complaint, p. 12. While Plaintiff claimed alternative relief for perceived and actual disabilities, this appeal will focus on the perceived disability under the third definitional prong of the ADA.

**SUMMARY OF ARGUMENT AND STANDARD OF REVIEW**

Reversal is required under this Court's settled standards. Specifically, this Court reviews de novo a district court's decision to grant a motion to dismiss under Rule 12(b)(6). *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Id.* And a complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is because "[t]he court's function on a Rule 12(b)(6) motion is" only to determine whether the complaint "is legally sufficient to state a claim for which relief may be granted." *Smith*, 561 F.3d at 1098.

Under these standards, the district court was wrong to dismiss Plaintiff's claims for constructive termination, hostile work environment and violations of the ADA, in violation of 42 U.S.C. § 12112(b)(5)(b). First, the district court mistakenly applied the case law, incorrectly imposing higher pleading standards than required under law. Without these irrelevant legal barriers, Ms. McDade's allegations of how Defendant violated the law that prevents discrimination on the basis of a disability, or a perceived disability.

5

Secondly, the district court disregarded key allegations in Ms. McDade's complaint to conclude that they had not adequately alleged a disability. The district court had no basis for rejecting Plaintiff's allegations.

## ARGUMENT

**I. Ms. McDade's employer obviously perceived her to have a disability, or alternatively used the guise of a suspected disability as a coercion tactic after Ms. McDade blew the whistle on monetary ethics allegations against her employer.**

The Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 328, 42 U. S. C. § 12101 *et seq.,* prohibits certain employers from discriminating against individuals on the basis of their disabilities. See § 12112(a).

To proceed with an ADA discrimination claim, Ms. McDade must establish that she has a "disability." She may do this by showing she (1) has "a physical or mental impairment that substantially limits one or more of [her] major life activities"; (2) has "a record of such an impairment"; or (3) was "regarded as having such an impairment." 42 U.S.C. § 12102(1). In this case, we will focus on the third definition of disability – "regarded as having" an impairment.

### A.    "Regarded as Having" an Impairment

The ADA defines "disability" as "regarded as having [a physical or mental] impairment." 42 U.S.C. § 12102(1)(C). This definition is satisfied "if the individual establishes that he or she has been subjected to an action prohibited under this

chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). "[T]he only qualification for an impairment in a 'regarded as' claim is that the impairment not be 'transitory and minor.'" *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016) (quoting § 12102(3)(B)).

Except where an impairment is transitory and minor, "an individual is 'regarded as having such an impairment' any time a covered entity takes a prohibited action against the individual because of an actual or perceived impairment, even if the entity asserts, or may or does ultimately establish, a defense to such action. 29 C.F.R. § 1630.2(1)(2).

The record contains evidence that, if believed, would establish each of the legal requirements for establishing a "regarded as" disability. First, Ms. McDade alleged that her employer attempted to involuntarily commit her to a psychiatric institute for what they asserted was "manic" behavior. This asserted psychological disability was perceived by the employer and was not a requested accommodation by the employee. Thus, the assertion by the lower court that, "…the Complaint alleges no facts showing Plaintiff suffers from or has a record of a physical or mental impairment" is irrelevant. ROA, p. 37. Clearly, the employer Hospital believed McDade to suffer from the psychological impairment of mania or they would not have sent in a doctor to accomplish this. Fortunately, the doctor did not 'finish the

job' so to speak, yet the mission was accomplished. They ridded themselves of Ms. McDade because the action was perceived as threatening and Ms. McDade immediately fled, resulting in this constructive discharge through hostile work environment, harassment and violation of any resemblance of ADA requirements.

The lower court used a procedural loophole to deny Ms. McDade her day in court stating, "To establish WCHD regarded McDade as disabled, she had to allege WCHD "was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." ROA, p. 38. This procedural loophole, is not allowed for under law in this instance. Disability is defined in one of three ways pursuant to 42 U.S.C. Code § 12102. The definitions of disability are self-fulfilling and need not be further cited within the EEOC's charging document. The lower court misapplied case law in saying, "Plaintiff's failure to allege anything in her EEOC Charge of Discrimination concerning her 'regarded as' disability prevents her from raising it here." ROA, p. 38 citing *McCray v. McDonough*, 2023 WL 171927, at 4-5 (D. Kan. Jan. 12, 2023). The lower court claimed that *McCray* stands for the proposition that "plaintiff's allegations in an EEOC charge must contain sufficient facts concerning the discriminatory and retaliatory actions underlying each claim such that the conduct alleged in the complaint would fall within the scope of an EEOC investigation which is reasonably expected given the charge of discrimination submitted to EEOC." ROA, p. 38.

The court stated that McDade's charge alleged only that she was a qualified individual with a disability that substantially limited a major life activity. ROA, p. 38. The court takes issue with the lack of definitional provision on the face of the charging document. *Id.* This analysis misses the mark. The lower court was incorrect in its holding that, "A cognizable disability is a necessary element to all of Plaintiff's disability discrimination claims; thus, those claims necessarily fail." ROA, p. 38.

The Americans with Disabilities Act Amendments Act ("ADAAA") of 2008 addressed the Supreme Court's restrictions to address societal discrimination. The Congressional purpose of the ADAAA was to carry out the ADA's objectives to provide "a clear and comprehensive national mandate for the elimination of discrimination" by reinstating a broad scope of protection to be available under the ADA. 42 U.S.C. § 12101(b)(1). The focus of the amendments concerned the definition of "disability" under law. Congress purposefully added language to clarify legislative intent in how to understand and apply the "regarded as" or third prong of the definition and specifically, to reject the Supreme Court's reasoning in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) with regard to coverage under the third prong of the definition and reinstate the reasoning of the Supreme Court in *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987) which set forth a broad view of the third prong of the definition of handicap under the Rehabilitation Act of 1973. 42 U.S.C. § 12101(b)(3). The "regarded as" prong is different because the focus in

9

on discrimination and adverse treatment on the basis of the difference. No reasonable accommodation is owed to those claiming protection under the third prong. 42 U.S.C. § 12201(h). Congress justified this because if an individual needed a reasonable accommodation, they would likely be able to meet the first prong definition of disability. 154 Cong. Rec S8344 and S8347.

The issue is not whether one is a member of a protected group but whether adverse action was taken against the individual because of a perceived or actual impairment. The individual claiming discrimination under this prong does not have to show "substantial limitation" in a "major life activity." Instead, the focus is on the adverse action taken by an employer.

In this instance, the threat of the Title 25 involuntary psychiatric hold is the most obvious and culminating adverse action taken by the employer which was pled (but others were pled as well including the report to the Board and request from administration that McDade change records). See complaint, p. 4. Since harassment, exclusion, and placement are all prohibited and specified adverse actions, the Plaintiff satisfied her initial burden of pleading and the lower court erred in the dismissal of the ADA claims in this matter. 29 C.F.R. § 1630.2(l)(1).

The record contains evidence that, if believed, would establish each of *Adair*'s requirements for establishing a "regarded as" disability. ROA, p. 5-6; *Adair v. City of Muskogee*, 823 F. 3d 1297, 1306 (10th Cir. 2016).

10

## II.    Ms. McDade's employer constructively discharged her through its harassing conduct that shocks the conscious. The district court's dismissal of this claim cannot stand. The precedential impact is horrifying.

The "regarded as" definition under the ADAAA must be interpreted very broadly and is not focused on the severity criteria of the physical or mental impairment to address the conscious and unconscious bias against individuals with actual or perceived impairments. Any adverse action against an employee must be based on nondiscriminatory, legitimate and non-retaliatory reasons. *Turner v. Phillips* 66 Co., 791 Fed. Appx. 699 (10th Cir. 2019). The "regarded as" disability definition addresses stigma and bias directly by focusing on the adverse action taken against the individual. The adverse action was specifically pled at the EEOC level as well as in the Complaint and thus no procedural problem exists. The definitional aspects of this claim automatically enter into the analysis without specifically being cited to on the face of the EEOC complaint. To hold contrary would undermine the entire purpose of the ADA and its amendments. This is a significant difference from the earlier approach taken in the disability rights law and this broad interpretation with self-executing definitions will help eliminate discriminatory practices and promote relief to more suffering individuals.

To support a hostile work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1171 (10th Cir. 2018) (internal quotation marks omitted). The environment must have been "both objectively and subjectively hostile." *Id.* "We assess the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (emphasis and internal quotation marks omitted). "In evaluating the circumstances, we consider such factors as the frequency of the discriminatory conduct; its severity; whether it unreasonable interferes with an employee's work performance." *Id.* (brackets and internal quotation marks omitted).

In the context of a hostile work environment claim, a single event, if extraordinarily severe, can alter the conditions of a working environment. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243-44 (10th Cir. 2001). Conduct that alters terms, conditions, or privileges of employment is not necessarily limited to instances of economic or tangible discrimination; it also "includes requiring people to work in a discriminatorily hostile or abusive environment." *Nat'l R.R.*

12

*Passenger Corp. v. Morgan,* 536 U.S. 101, 115-16 (2002) (quoting *Harris*, 510 U.S. at 21).

At bar, the incidents as described in Plaintiff's Complaint were pervasive and severe enough to create an objectively hostile work environment. "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017) (brackets and internal quotation marks omitted). "To establish constructive discharge, a plaintiff must show that she had no other choice but to quit." *Id.* (internal quotation marks omitted). "A finding of constructive discharge must not be based only on the discriminatory act; there must also be aggravating factors that make staying on the job intolerable." *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992 (10th Cir. 1994). The employee's "subjective views of the situation are irrelevant"; "she must instead show the conditions of employment were objectively intolerable." *Hiatt*, 858 F.3d at 1318 (brackets and internal quotation marks omitted).

The position of the lower court on hostile work environment is untenable under law. In *James*, the employees "had a choice between two options:  lose benefits under early retirement; or continue to work while being harassed or moved to jobs where unreachable quotas could be used as a protect for firing them." 21 F.3d

13

at 993. Surely, a threat to be held for involuntary psychiatric detention is more significant that retirement benefits. The lower court erred in dismissal of the hostile work environment and constructive discharge claims under law. In fact, nothing could seem more "intolerable" under law than an involuntary psychiatric hold facilitated by one's employer. *See Tran v. Trs. Of State Colls.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004). Here, the severity and pervasiveness of a threatened involuntary psychiatric hold is permeated with intimidation and insult and the conduct on its face is physically threatening and humiliating. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021); *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1365 (10th Cir. 1997). The particular circumstances and context of the employer's behavior here warrants reversal by this Court as to the hostile work environment count.

## CONCLUSION

The district court dismissed Plaintiff's claims in counts 5-7 by applying the wrong law, and ignoring the complaint's alleged facts. This Court should reverse the lower court's legal and factual errors and hold that Plaintiff has pleaded sufficient claims.

Dated: July 15, 2024                    Respectfully submitted,

                                        */s/ Cassie Craven*
                                        CASSIE CRAVEN
                                        LONGHORN LAW LLC
                                        109 East 17th Street, Suite 223
                                        Cheyenne, WY 82001
                                        Telephone: (307) 823-3062
                                        cassie@longhornlawllc.com


                                        *Counsel for Plaintiff-Appellant*

## ORAL ARGUMENT STATEMENT

Plaintiffs-Appellants respectfully request oral argument because this case raises important issues about the applicable law to Plaintiff's claims as well as the correct standards for assessing factual allegations regarding Plaintiff's claims.

Dated: July 15, 2024                    Respectfully submitted,

_/s/ Cassie Craven_____

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this document:

(i) complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(A) because, excluding those portions exempted by Fed. R. App. P. 32(f), it contains less than 13,000 words, as determined by the word counting feature of Microsoft Word; and

(ii) complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and 10th Circuit Rule 32(A) because it has been prepared in a proportionally spaced typeface using Microsoft 365, in Times New Roman 14-point font.


Dated: July 15, 2024                     Respectfully submitted,

                                         */s/ Cassie Craven*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)    all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)    if required to file additional hard copies, that the ECF submission is an exact copy of that document;

(3)    the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee LifeSafe, version 1.11.279, most recently updated on October 18, 2023, and according to the program is free of viruses.

Dated: July 15, 2024                          Respectfully submitted,

                                              */s/ Cassie Craven*