No. 24-8031

---

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

AMANDA MCDADE,

PLAINTIFF/APPELLANT

V.

WESTON COUNTY HOSPITAL DISTRICT

DEFENDANT/APPELLEE

---

Appeal from the United States District Court
for the District of Wyoming
The Honorable Scott W. Skavdahl Presiding
Case No. 1:23-cv-00232

---

## APPELLEE'S ANSWER BRIEF

---

Bradley T. Cave, P.C.
Janae E. Ruppert
HOLLAND & HART LLP
2020 Carey Ave., Suite 800
P.O. Box 1347
Cheyenne, WY 82003
Telephone: 307.778.4200
bcave@hollandhart.com
jeruppert@hollandhart.com
*Counsel for Defendant/Appellee*

---

ORAL ARGUMENT IS REQUESTED

---

## TABLE OF CONTENTS

Page(s)

STATEMENT OF RELATED CASES .................................................................. viii

STATEMENT OF THE ISSUES........................................................................... 1

STATEMENT OF THE CASE .............................................................................. 3

      A.    Factual Background.................................................................. 3

      B.    Procedural History and Order under Review ......................... 5

            i.   Administrative Proceedings.............................................. 5

            ii.  District Court Proceedings................................................ 7

SUMMARY OF ARGUMENT ............................................................................. 9

ARGUMENT ....................................................................................................... 10

I.     McDade's Complaint fails to allege an actual disability and her ADA claims fail as a result........................................................................ 12

II.    The District Court correctly rejected McDade's "regarded as" disabled claim. ................................................................................. 14

      A.    McDade cannot amend her Complaint through her briefs................. 15

      B.    McDade failed to exhaust administrative remedies for a "regarded as" claim. ......................................................... 16

            i.   McDade's EEOC Charge is not adequate to exhaust administrative remedies for a "regarded as" claim under the ADA. .........................................................................18

            ii.  McDade's Complaint fails to plausibly plead a "regarded as" claim under the ADA..........................................................21

III.   The District Court correctly dismissed McDade's ADA hostile work environment claim. ............................................................... 22

A.    McDade's Complaint does not allege a hostile work
      environment *because of* her disability.................................. 23

B.    McDade's Complaint fails to demonstrate a plausible
      hostile work environment claim.......................................... 25

IV.   McDade has failed to raise a plausible claim for constructive
      discharge. ...................................................................... 28

V.    McDade failed to exhaust her administrative remedies with
      respect to her discriminatory termination claim.......................... 30

CONCLUSION ....................................................................... 32

STATEMENT REGARDING ORAL ARGUMENT ............................. 32

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................... 34

CERTIFICATE OF SERVICE .................................................... 35

ECF CERTIFICATIONS ........................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Adair v. City of Muskogee*,
  823 F.3d 1297 (10th Cir. 2016) ...........................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................11, 13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................11

*Berry v. T-Mobile USA, Inc.*,
  490 F.3d 1211 (10th Cir. 2007) ..................................................15, 22

*Brandt v. Crone*, No. 21-1093, 2022 U.S. App. LEXIS 8104
  (10th Cir. Mar. 28, 2022) (unpublished)............................................16

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc*.,
  861 F.3d 1081 (10th Cir. 2017) ....................................................10, 11

*Brooks v. Mentor Worldwide LLC*,
  985 F.3d 1272 (10th Cir. 2021) .........................................................11

*Brown v. LaFerry's LP Gas Co*.,
  708 F. App'x 518 (10th Cir. 2017) ....................................................24

*Burkhart v. Am. Railcar Indus., Inc.*,
  603 F.3d 472 (8th Cir. 2010) ...........................................................24

*Cadely v. New York City Dep't of Transp*.,
  No. 04 Civ. 8196 (FM), 2008 U.S. Dist. LEXIS 15176 (S.D.N.Y. 2008)
  (unpublished) ...........................................................................20

*Callahan v. Commc'n Graphics, Inc*.,
  657 F. App'x 739 (10th Cir. 2016).....................................................23

*Cowan v. Prudential Ins. Co. of Am.*,
  141 F.3d 751 (7th Cir. 1998) ...........................................................24

*Daly v. Westchester Cnty. Bd. of Legislators*,
    No. 19-CV-04642, 2023 U.S. Dist. LEXIS 134268
    (S.D.N.Y. Aug. 1, 2023) (unpublished)................................................21

*EEOC v. Picture People, Inc.*,
    684 F.3d 981 (10th Cir. 2012) ........................................................31

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)...............................................................26, 27

*Felkins v. City of Lakewood*,
    774 F.3d 647 (10th Cir. 2014) ....................................................12, 31

*Forest Guardians v. Forsgren*,
    478 F.3d 1149 (10th Cir. 2007) ......................................................11

*Garrett v. Hewlett-Packard Co.*,
    305 F.3d 1210 (10th Cir. 2002) ......................................................29

*Green v. Brennan*,
    578 U.S. 547 (2016)..................................................................14

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)...................................................................25

*Jojola v. Chavez*,
    55 F.3d 488 (10th Cir. 1995) .........................................................15

*Jones v. U.P.S., Inc.*,
    502 F.3d 1176 (10th Cir. 2007) .............................................16, 17, 30

*Justice v. Crown Cork & Seal Co.*,
    527 F.3d 1080 (10th Cir. 2008) ......................................................18

*Kear v. Bd. of Cnty. Comm'rs*,
    491 F. Supp. 2d 1052 (D. Kan. 2007)................................................19

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ......................................................11

*Koessel v. Sublette Cnty. Sheriff's Dep't*,
    717 F.3d 736 (10th Cir. 2013) .......................................................18

iv

*Lane v. Simon*,
    495 F.3d 1182 (10th Cir. 2007) ..........................................................11

*Lincoln v. BNSF Ry. Co.*,
    900 F.3d 1166 (10th Cir. 2018) ...................................................16, 17

*Lockard v. Pizza Hut, Inc.*,
    162 F. 3d 1062 (10th Cir. 1998) .........................................................27

*Morris v. City of Colo. Springs*,
    666 F.3d 654 (10th Cir. 2012) ......................................................27, 28

*Moya v. Schollenbarger*,
    465 F.3d 444 (10th Cir. 2006) ............................................................16

*Otero v. N.M. Corr. Dep't*,
    640 F. Supp. 2d 1346 (D.N.M. 2009) ................................................26

*Pa. State Police v. Suders*,
    542 U.S. 129 (2004)...................................................................29, 30

*Payan v. UPS*,
    905 F.3d 1162 (10th Cir. 2018) .........................................................26

*Prince v. Coco-Cola Bottling Co. United, Inc.*,
    No. 2:18-CV-1076, 2020 U.S. Dist. LEXIS 47664
    (W.D. La. Mar.18, 2020) (unpublished)............................................20

*Sanderson v. Wyo. Highway Patrol*,
    976 F.3d 1164 (10th Cir. 2020) .........................................................17

*Sandoval v. Boulder Reg'l Commc'ns Ctr.*,
    388 F.3d 1312 (10th Cir. 2004) .........................................................28

*Seibert v. Lutron Elecs.*,
    408 F. App'x 605 (3d Cir. 2010) .......................................................20

*Smith v. Cheyenne Ret. Invs. L.P.*,
    904 F.3d 1159 (10th Cir. 2018) ...................................................17, 19

*Tran v. Trs. of State Colls. in Colo.*,
    355 F.3d 1263 (10th Cir. 2004) .........................................................29

*Turnbull v. Topeka State Hosp.*,
  255 F. 3d 1238 (10th Cir. 2001) ..........................................................27

*Wennerstrom v. City of Denver*,
  No. 19-cv-03251-NYW, 2021 U.S. Dist. LEXIS 69142
  (D. Colo. Apr. 9, 2021) (unpublished)..................................................19

*Williams v. FedEx Corp. Servs.*,
  849 F.3d 889 (10th Cir. 2017) ........................................................23, 25

*Yin v. N. Shore LIJ Health Sys.*,
  20 F. Supp. 3d 359 (E.D.N.Y. 2014) ....................................................20

## STATUTES

42 U.S.C. § 1985(d) ............................................................................7

42 U.S.C. § 12102 .......................................................................13, 21

42 U.S.C. § 12102(1) ........................................................................12

42 U.S.C. § 12102(3) ........................................................................22

42 U.S.C. § 12112(b)(5)(b).........................................................passim

42 U.S.C. §§ 12101-12117 .........................................................16, 30

Wyo. Stat. Ann. § 25-10-101(a)(ix)......................................................5

Wyo. Stat. Ann. § 25-10-109 ...............................................................5

Wyo. Stat. Ann. § 35-2-910 ............................................................7, 8

## OTHER AUTHORITIES

10th Cir. R. 28.2(C)(4)......................................................................32

Fed. R. App. P. 32(a)(5) ...................................................................34

Fed. R. App. P. 32(a)(6) ...................................................................34

Fed. R. App. P. 32(a)(7)(B)...............................................................34

Fed. R. Civ. P. 12(b)(6)..................................................................7, 10

Rule 32(a)...................................................................................................34

## STATEMENT OF RELATED CASES

Pursuant to 10th Cir. R. 28.2(C)(3), Appellee states that there are no prior or related appeals.

## STATEMENT OF THE ISSUES

1.      The disability discrimination claims pleaded in McDade's Complaint require an actual disability. McDade's Complaint failed to allege facts sufficient to plead that she had an actual disability, and her ADA claims failed as a result. Did the district court err in dismissing the complaint?

2.      To succeed on a "regarded as" disabled claim, a plaintiff must allege the employer's mistaken belief about a specified impairment and administratively exhaust the claim before pursuing litigation.  McDade's Complaint failed to plead facts sufficient to establish a "regarded as" claim, and she did not exhaust her administrative remedies for such a claim.  Must McDade's Complaint be dismissed for failure to plausibly plead a "regarded as" claim and failing to exhaust her remedies?

3.      To succeed in a hostile work environment claim, an employee must first demonstrate the hostile environment was *because of* her disability, and second, allege facts that her workplace was sufficiently severe or pervasive to create an abusive working environment. Did the District Court err in dismissing McDade's hostile work environment claim for failing to meet these requirements?

4.      An employee relying solely on a hostile-environment constructive discharge claim must show more than a hostile environment; they must show that the conditions were so intolerable that a reasonable person would have felt

1

compelled to resign.  McDade's failure to plausibly plead facts constituting a hostile work environment and the objective lack of any other option is fatal to her constructive discharge claim.   Must McDade's constructive discharge claim be dismissed?

5.    To allege a discriminatory termination claim, through constructive discharge or otherwise, an employee must first file a charge and administratively exhaust administrative remedies for that claim. McDade failed to exhaust her administrative remedies on her discriminatory termination claim because her charge alleged only retaliatory termination.  Did the District Court err in dismissing this claim?

## STATEMENT OF THE CASE

### A.    Factual Background

The following allegations of the Complaint are taken as true for the purposes of this brief. Weston County Hospital District, which does business as Weston County Health Services (WCHD), is a public hospital located in Newcastle, Wyoming.[1] Amanda McDade is a resident of Upton, Wyoming who was employed by WCHD from June 11, 2019 through October 14, 2021.[2] McDade was employed as a human resource generalist, providing her access to company records, including payroll, timekeeping, and employee records.[3] At some point during her employment, McDade raised concerns about "money mismanagement, illegality, and ethics" to the Board of Trustees president, Connie James.[4] In response, McDade asserts she was told to modify records to conceal the alleged wrongdoing, which she refused to do.[5] As a result, she alleges WCHD subjected her to a hostile work environment in retaliation to her whistleblowing efforts.[6]

---

[1] Aplt. App'x (App.) Vol 1 at 6. Citations to the appellant's appendix are listed in the "Volume at Page" format. The cited page numbers are the page numbers this Court added to the bottom of each page of McDade's corrected appendix.
[2] *Id*.
[3] App. Vol 1 at 6-7.
[4] App. Vol 1 at 7.
[5] App. Vol 1 at 7.
[6] App. Vol 1 at 7.

All of McDade's factual assertions in support of her hostile work environment claim occurred on October 14, 2021. [7] That day, McDade's personal treating physician, Dr. Sara Thurgood—also employed by WCHD—made an "uninvited and unannounced" visit to McDade's office at the hospital. [8] Dr. Thurgood entered McDade's office and explained she was there "first and foremost" as McDade's doctor, closing the doors behind her to maintain confidentiality.[9]

After discussing McDade's "previous treatments," Dr. Thurgood indicated that WCHD's management was "concerned" for McDade.[10] McDade responded, "[n]o they're not. They're so concerned in saving their own (expletive) right now."[11] Dr. Thurgood stated, "they've got an employee they're concerned about with what you've taken to the board, I don't know the details but, [sic] they're concerned about that but then they're also concerned with some of the things that you've said and things that would suggest an almost manic. [sic]"[12] McDade immediately denied being manic and Dr. Thurgood agreed that she did not appear manic. [13] Dr. Thurgood then said:

> [m]y concern, my biggest concern here is that they are talking about **potentially** uhh I hope that it's ok I'm telling you this, they're talking

---

[7] App. Vol. 1 at 7 ("This frightening tale begins on October 14, 2021…") and 7-11.
[8] App. Vol 1 at 8.
[9] App. Vol 1 at 9.
[10] App. Vol 1 at 9.
[11] App Vol. 1 at 9.
[12] App. Vol. 1 at 9.
[13] App. Vol 1 at 9.

*about **potentially** involuntary commitment*…and I can't do that, it would be a conflict of interest. I'm like an employee here and you are in HR, I am your physician and will continue to be.[14]

As the conversation continued, Dr. Thurgood expressed having little involvement with "Title 25"[15] proceedings, ultimately indicating she does not know what to do as "this is definitely new territory for [her]" and "this is not a position [she's] ever been put in before."[16] Dr. Thurgood stated, "I think that's the position they're wanting me to make that assessment and I can't make that assessment, it's a conflict of interest." [17] McDade then ended the conversation by leaving the hospital.[18] McDade tendered her resignation to WCHD by email.[19]

### B.    Procedural History and Order under Review

#### i.    Administrative Proceedings

On April 11, 2022, McDade filed a Charge of Discrimination (Charge) against WCHD with the Wyoming Fair Employment Program and the EEOC.[20] In the

---

[14] App. Vol 1 at 10 (bold emphasis added).
[15] "Title 25" is apparently a reference to the statutory procedure provided by Wyoming law for the emergency detention of individuals who pose a danger to themselves or others. *See* Wyo. Stat. Ann. § 25-10-101(a)(ix) (definition of mentally ill) and Wyo. Stat. Ann. § 25-10-109 (establishing process for emergency detention of person mentally ill).
[16] App. Vol 1 at 10.
[17] App. Vol 1 at 10.
[18] App. Vol 1 at 10-11.
[19] App. Vol 1 at 11.
[20] App. Vol. 1 at 5 and 53-54.

Charge, McDade alleged WCHD subjected her to religion- and disability-based discrimination and retaliation.[21] McDade's Charge stated as follows:[22]

1. I belong to the protected groups, Christian and an individual protected under the ADA.

2. My disability substantially limits a major life activity.

3. I otherwise was qualified for my position and performing the work at a satisfactory level.

4. The employer failed to make a reasonable accommodation where an accommodation would not place an undue hardship on the employer.

5. I was subjected to religion- and disability-based harassment and intimidation.

6. The harassment complained of affected a term, condition, or privilege of employment and was so pervasive as to alter the working conditions and create an abusive work environment.

7. Despite my satisfactory performance, I was paid a lower wage.

8. Other similarly-situated employees outside my protected groups were paid a higher wage in similar circumstances.

9. I engaged in protected opposition to Title VII and ADA prohibited discrimination.

10. I suffered an adverse action by the employer subsequent to or contemporaneous with my protected activity.

   a. The employer has made working conditions so difficult that a reasonable person in my position would feel compelled to resign. On October 14, 2021, I resigned.

---

[21] App. Vol. 1 at 53.
[22] App. Vol. 1 at 53-54.

6

11.   There exists a causal connection between my protected activity and the employer's action.

McDade's Charge does not allege that WCHD perceived her to be disabled or that WCHD terminated her because of a disability or her religious beliefs. The EEOC sent her right to sue letter dated September 11, 2023.[23]

ii.   <u>District Court Proceedings</u>

McDade filed her Complaint against WCHD on December 7, 2023.[24] McDade's Complaint asserted causes of action against WCHD for whistleblower retaliation in violation of Wyo. Stat. Ann. § 35-2-910, breach of contract, civil conspiracy in violation of 42 U.S.C. § 1985(d), negligence, constructive termination, hostile work environment and discriminatory discharge because of disability and/or need for accommodation, specifically citing § 12112(b)(5)(b) of the ADA.[25]

WCHD moved to dismiss McDade's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[26] WCHD argued McDade's Complaint failed to state plausible claims because (1) she failed to file a timely governmental claim as to her state law claims; (2) she failed to exhaust her administrative remedies with regard to her "regarded as" disabled claim and her discriminatory discharge claim; (3) the allegations in her Complaint do not state plausible failure to

---

[23] App. Vol. 1 at 5.
[24] App. Vol. 1 at 4.
[25] App. Vol. 1 at 4-17.
[26] App. Vol. 1 at 31-54.

accommodate or hostile work environment claims under the ADA; (4) the civil conspiracy claim is barred by Tenth Circuit precedent; and (5) Wyo. Stat. Ann. § 35-2-910 does not create a private cause of action for hospital whistleblowers.[27]

The District Court granted WCHD's motion dismissing all of McDade's claims.[28] The District Court found, in relevant part, that McDade's Complaint "alleges no facts showing Plaintiff suffers from or has a record of a physical or mental impairment."[29]  The court then noted that McDade contends that her Complaint alleges facts "from which an inference could be drawn" that WCHD regarded her as having a disability—identifying the one allegation in the Complaint which may support a "regarded as" claim—WCHD "claimed to have knowledge of the Plaintiff's health diagnosis."[30] The District Court agreed with WCHD that McDade failed to exhaust her administrative remedies, finding that her Charge failed to raise "anything" concerning her "regarded as" disability, which bars her from raising it now.[31]

In addition, the court agreed that the Complaint suffers from "too little supporting factual averments to cross the line from speculation to plausible" to

---

[27] App. Vol. 1 at 33-51.
[28] App. Vol. 1 at 78-95.
[29] App. Vol. 1 at 90.
[30] App. Vol. 1 at 90 (internal quotation marks omitted).
[31] App. Vol. 1 at 91.

support a hostile work environment claim.[32]  McDade filed her Notice of Appeal challenging only the District Court's dismissal of her constructive termination, hostile work environment, and claims of ADA violations, citing again specifically § 12112(b)(5)(b) of the ADA as the source of her claims.[33]

## SUMMARY OF ARGUMENT

The District Court correctly dismissed McDade's claims of constructive discharge, hostile work environment, and discriminatory termination in violation of the ADA.

First, McDade's Complaint failed to establish that she is disabled. The District Court's analysis focused on whether the Complaint included allegations sufficient to plead the existence of an actual physical impairment and found that McDade's assertion that she was disabled was inadequate to state a claim for disability discrimination. In her response brief before the District Court and her principal brief before this Court, McDade attempts to recast her Complaint to create a "regarded as" disability claim. This Court should reject that effort, just as the District Court did, because McDade did not plead a "regarded as" claim in her Complaint, and because the Charge she filed did not administratively exhaust her remedies for such a claim.

---

[32] App. Vol. 1 at 93.
[33] Aplt. Br. at 6.

Second, the factual allegations contained in McDade's Complaint fail to plausibly plead claims against WCHD for the alleged hostile work environment and constructive discharge claims. McDade's hostile work environment claim fails for two reasons: (1) her allegations contradict the requirement that the allegedly hostile environment was *because of* her disability, and (2) she fails to allege facts that disability-related mistreatment in her workplace was sufficiently severe or pervasive to create an abusive working environment. McDade's failure to plausibly plead facts constituting a hostile work environment is further detrimental to her constructive discharge claim.

Finally, McDade alleges constructive discharge as a means to assert a discriminatory termination claim. Her allegations of constructive discharge fail to meet the requirements of that theory. Moreover, McDade failed to exhaust her administrative remedies on her discriminatory termination claim because her charge alleged only that her employment was terminated in retaliation for protected activity. Dismissal of this claim is appropriate.

## ARGUMENT

This Court reviews *de novo* a dismissal of a complaint under Fed. R. Civ. P. 12(b)(6). Under this standard, this Court accepts all well-pleaded facts, as distinguished from conclusory allegations, as true. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1104-05 (10th Cir. 2017). Viewed in this

fashion, a complaint must be dismissed if its claims are not "plausible." *Id.* at 1190; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In this context, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Under such a circumstance, "the plaintiff[] [has] not nudged [her] claim[] across the line from conceivable to plausible." *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Although this does not require McDade to establish a prima facie case in her Complaint, "the elements of [the] alleged cause of action help to determine whether [she] has set forth a plausible claim." *Id.* at 1192. This requires a determination as to "whether the Complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

11

**I.    McDade's Complaint fails to allege an actual disability and her ADA claims fail as a result.**

McDade's Charge and Complaint allege only that she is an individual with an actual disability.[34] Indeed, Count 7 of her Complaint is titled ". . . discriminatory discharge because of disability and/or need for accommodation, in violation of 42 U.S.C. § 12112(b)(5)(b)." [35] This statutory provision of the ADA defines discrimination as "denying employment opportunities to a[n]…employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee . . . ." § 12112(b)(5)(B).

As the District Court concluded, McDade's Complaint failed to allege facts to support her allegation of an actual disability.[36]  The ADA defines an actual disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1). McDade must allege an impairment and identify how the impairment substantially limits one or more of her major life activities. *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (citation omitted). McDade's Complaint fails to identify any physical or

---

[34] *See* App. Vol. 1 at 53, ¶ 2 and App. Vol. 1 at 15, ¶ 71.
[35] App. Vol. 1 at 15.
[36] App. Vol 1. at 93

mental impairment and includes no factual allegations about how her unknown impairment limits one or more major life activities.

Instead, McDade's Complaint provides only the following conclusory allegations as to her claimed "disability":

- She "was an individual with a disability under 42 U.S.C. § 12102. She was qualified and able to perform the essential functions of her job, without reasonable accommodation."

- WCHD "claimed to have knowledge of [her] health diagnosis." McDade also apparently refused to specify the nature of her disability until discovery.

- "Instead of accommodating any disability," WCHD "instead, weaponized allegations of mental health in an effort to intimidate and silence" her.

- She "made her needs and requests known."

- WCHD "did not provide any reasonable accommodation or medical leave." Instead, it "constructively terminated" her "employment because of her disability or because of the need to provide her with a reasonable accommodation, in violation of 42 U.S.C. § 12112(b)(5)(b) . . . ."[37]

These statements are legal conclusions or threadbare recitals, lacking any factual support in the Complaint, and are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681. What disability? What "health diagnosis?" What "needs and requests" did McDade make known? What accommodation did she request?  These

---

[37] App. Vol. 1 at 15 at ¶¶ 71-76 (omitting paragraph numbers).

13

unanswered questions go to the basic grist of an ADA discrimination or failure to accommodate claim.

The District Court properly determined that the Complaint alleges no facts showing McDade is actually disabled.[38] Her constructive discharge allegations require underlying illegal discrimination. According to the Supreme Court, "a constructive-discharge claim requires two basic allegations: discriminatory conduct by the employer that leads to resignation of the employee." *Green v. Brennan*, 578 U.S. 547, 556-57 (2016). The absence of factual allegations of a disability is fatal to her discriminatory termination via constructive discharge claim and hostile work environment claim. *Iqbal*, 556 U.S. at 678-79 ("a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss.)

## II.  The District Court correctly rejected McDade's "regarded as" disabled claim.

Instead of relying on the allegations of her Complaint, McDade used her response brief in the District Court and her opening brief in this Court to attempt to amend her Complaint to raise a "regarded as" disability claim.  The District Court properly rejected McDade's "regarded as" disabled claims because she did not exhaust administrative remedies for such a claim. Also, even when taken as true, the

---

[38] App. Vol. 1 at 89-90.

14

allegations in the Complaint are insufficient to demonstrate WCHD regarded McDade as impaired under the ADA's statutory definition.

### A.    McDade cannot amend her Complaint through her briefs.

First, McDade's Complaint does not allege a "regarded-as" ADA claim.  In response to WCHD's motion to dismiss, she attempted to amend her Complaint by arguing that "an inference could be drawn that she was regarded as having" a disability based on a single unsupported allegation –WCHD "claimed to have knowledge of the Plaintiff's health diagnosis."[39] But this Court has held that, "[a]n employer's knowledge of an impairment alone is insufficient to establish the employer regarded the employee as disabled." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219 (10th Cir. 2007).

McDade did not ask the District Court for leave to amend her Complaint to allege a "regarded as" claim. Instead, McDade has apparently abandoned her Complaint's claims of failure to accommodate an actual disability to pursue a "regarded as" disabled claim through her briefing. This Court should not consider those assertions for two reasons. First, this Court's *de novo* review is limited to assessing the legal sufficiency of the allegations in the "four corners of the complaint." *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995). Second, a corollary to this rule is that assertions in a plaintiff's brief in opposition to a motion

---

[39] App. Vol. 1 at 60 and 90.

to dismiss that are absent from the complaint should not be considered on review. *See Moya v. Schollenbarger*, 465 F.3d 444, 457 n. 16 (10th Cir. 2006); *Brandt v. Crone*, No. 21-1093, 2022 U.S. App. LEXIS 8104, at *1, n. 1 (10th Cir. Mar. 28, 2022) (unpublished) (court does not consider extraneous assertions in briefing). McDade's efforts to amend her Complaint via briefing should be rejected by this Court.

**B.    McDade failed to exhaust administrative remedies for a "regarded as" claim.**

The District Court correctly held McDade's Charge failed to assert that WCHD regarded her as disabled and therefore she failed to exhaust administrative remedies for such a claim. McDade argues the District Court improperly used a "procedural loophole" depriving McDade of her day in court.[40] She is incorrect. Failure to exhaust administrative remedies is an affirmative defense, not a procedural loophole, and the district appropriately applied the exhaustion requirement in dismissing her claims. *See Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1185 (10th Cir. 2018).

"Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (citation omitted). Although the filing of an EEOC charge is not jurisdictional, it is

---

[40] Aplt. Br. 8.

a statutory requirement, and when McDade failed to comply with it, WCHD raised failure to exhaust as an affirmative defense. *See Lincoln*, 900 F.3d at 1185. This Court reviews the District Court's dismissal for failure to exhaust administrative remedies *de novo*. *Smith v. Cheyenne Ret. Invs. L.P*., 904 F.3d 1159, 1164 (10th Cir. 2018).

This Court has explained that the exhaustion requirement serves "two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (internal quotation marks omitted) (quoting *Smith*, 904 F.3d at 1164. "To advance these purposes[,] a plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id*. (brackets, ellipsis, and internal quotation marks omitted). This means:

> [T]he charge must contain **facts** concerning the discriminatory and retaliatory **actions** underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

*Jones*, 502 F.3d at 1186 (internal quotation marks omitted) (emphasis added) (citation omitted).

     i.    <u>McDade's EEOC Charge is not adequate to exhaust administrative remedies for a "regarded as" claim under the ADA.</u>

McDade's Charge doesn't use the terms "regard" or "perceive" or any other allegation that WCHD thought she was impaired or disabled.   Under a "regarded as" claim, the focus is on the "employer's subjective state of mind." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) (quoting *Justice v. Crown Cork & Seal Co*., 527 F.3d 1080, 1086 (10th Cir. 2008)).   The Charge does not allege anything about WCHD's beliefs regarding whether McDade had an impairment.

Instead, it says that she belonged to the "protected groups of Christian and an individual protected under the ADA." She then alleged that she actually had a disability that WCHD failed to accommodate. Her Charge states in relevant part:

- I belong to the protected groups, Christian and an individual protected under ADA.

- My disability substantially limits a major life activity.

- I otherwise was qualified for my position and performing the work at a satisfactory level.

- The employer failed to make a reasonable accommodation where an accommodation would not place an undue hardship on the employer.

- I was subjected to religion- and disability-based harassment and intimidation.[41]

---

[41] App. Vol. 1 at 76 (emphasis added) (omitting paragraph numbers).

The scope of the administrative investigation that would reasonably grow out of these allegations would be limited to alleged harassment or failure to accommodate based on a religious belief or practice or an actual disability, rather than an inquiry into WCHD's subjective belief necessary for a "regarded as" disability discrimination claim. *Smith*, 904 F.3d at 1164-65 ("The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge") (internal brackets omitted) (citation omitted). No allegations in the Charge address any belief on the part of WCHD – mistaken or otherwise – about McDade's limitations.

Because McDade did not allege facts in her Charge that WCHD regarded her as disabled, the District Court correctly determined she failed to exhaust her administrative remedies, dismissing her "regarded as" claims. *Wennerstrom v. City of Denver*, No. 19-cv-03251-NYW, 2021 U.S. Dist. LEXIS 69142, at *14-15, *18 (D. Colo. Apr. 9, 2021) (unpublished) (citations omitted) (finding that plaintiff did not exhaust her administrative remedies for a "regarded as" claim because she did not allege "regarded as" facts, alleging instead that she requested an accommodation, and the City refused her accommodation and terminated her because of her disability); *Kear v. Bd. of Cnty. Comm'rs*, 491 F. Supp. 2d 1052, 1055 (D. Kan. 2007) (finding that Plaintiff did not exhaust her administrative remedies with respect

19

to her "regarded [as]" claim because in her Charge she alleged only that "I am disabled[,]" and noting that "Plaintiff is required to exhaust all discrete acts of discrimination before proceeding to the District Court"); *Seibert v. Lutron Elecs*., 408 F. App'x 605, 608 (3d Cir. 2010) (finding that the plaintiff failed to exhaust her administrative remedies because "[t]he facts alleged in [the plaintiff's] EEOC filing could not reasonably support a claim that [the employer] . . . wrongly perceived her as disabled"); *Prince v. Coco-Cola Bottling Co. United, Inc.*, No. 2:18-CV-1076, 2020 U.S. Dist. LEXIS 47664, at *28 (W.D. La. Mar.18, 2020) (unpublished) (finding a plaintiff fails to exhaust his administrative remedies with respect to a regarded as claim if he makes no reference to such a claim in his EEOC charge because the charge alleged only that employer "did not accommodate me re: my disability"); *Cadely v. New York City Dep't of Transp*., No. 04 Civ. 8196 (FM), 2008 U.S. Dist. LEXIS 15176, *29-30 (S.D.N.Y. 2008) (unpublished) (the plaintiff's failure to cite any facts to suggest he was pressing a "regarded as" claim "is particularly relevant because a 'regarded as' claim turns on the employer's perception of the employee, not whether the employee actually has a disability") (internal quotation marks omitted) (citation omitted); *Yin v. N. Shore LIJ Health Sys*., 20 F. Supp. 3d 359, 368 (E.D.N.Y. 2014) (finding that an EEOC charge was not "reasonably related" to the plaintiff's "regarded as" disability discrimination where the EEOC charge did not contain "any facts that defendant regarded [plaintiff] as

having a disability or any facts suggesting that she was making such a claim"); *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2023 U.S. Dist. LEXIS 134268, at *12-13 (S.D.N.Y. Aug. 1, 2023) (unpublished) (finding that the EEOC charge contains no facts that Defendant regarded Plaintiff as having a disability and "Plaintiff's 'regarded as' disability discrimination claim under the ADA is precluded for failure to exhaust administrative remedies").

> ii.    McDade's Complaint fails to plausibly plead a "regarded as" claim under the ADA.

McDade's Complaint mimics her Charge by repeatedly making allegations about an actual disability and failure to accommodate rather than a perceived disability:

- [McDade] was an individual **with a disability** under 42 U.S.C. § 12102. She was qualified and able to perform the essential functions of her job, **without reasonable accommodation**.

- [WCHD] claimed to have knowledge of the [her] health diagnosis . . .

- **Instead of accommodating any disability**, [WCHD] instead, weaponized allegations of mental health in an effort to intimidate and silence [her].

- [She] made her needs and requests known.

- [WCHD] did not provide any **reasonable accommodation** or medical leave.[42]

---

[42] App. Vol. 1 at 15 at ¶¶ 71-75 (emphasis added) (omitting paragraph numbers).

In addition, the title of Count 7 of her Complaint cites 42 U.S.C. § 12112(b)(5)(b) which applies only to a "qualified individual with a disability . . ." who is denied reasonable accommodation.

McDade's Complaint alleges *only one* conclusory statement on which McDade argues a "regarded as" claim could be inferred – "[WCHD] claimed to have knowledge of the Plaintiff's health diagnosis."[43]  Knowledge of an impairment does not establish the employer regarded an employee as disabled. *Berry*, 490 F.3d at 1219.  McDade needed to allege: (1) she had an actual or perceived impairment; (2) the perceived impairment is neither transitory nor minor (i.e. had a duration of more than six months) and (3) that WCHD was aware of and therefore perceived the impairment at the time of the alleged discriminatory action. *See* 42 U.S.C. § 12102(3); *Adair v. City of Muskogee*, 823 F.3d 1297, 1305-06 (10th Cir. 2016). The Complaint includes no factual allegations to match these requirements. The District Court properly rejected McDade's *post hoc* effort to amend her Complaint to include a "regarded as" claim.

## III.   The District Court correctly dismissed McDade's ADA hostile work environment claim.

McDade's factual allegations do not state a valid hostile work environment claim. McDade's Complaint must allege plausible facts that (1) she is disabled as

---

[43] App. Vol. 1 at 15.

defined by the ADA; (2) she was "subject to unwelcome harassment, (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, [it] altered a term, condition or privilege of [her] employment and created an abusive working environment." *Callahan v. Commc'n Graphics, Inc*., 657 F. App'x 739, 746-747 (10th Cir. 2016). As discussed above, McDade has not sufficiently alleged she is disabled, and her hostile work environment claim fails at that initial prong. Assuming for purposes of the appeal that she has alleged she is disabled under the ADA, her claim further fails on the third and fourth prongs.

### A.     McDade's Complaint does not allege a hostile work environment *because of* her disability.

First, McDade does not allege the harassing conduct, which occurred on October 14, 2021, was "*because of*" a disability. *See Williams v. FedEx Corp. Servs*., 849 F.3d 889, 897-98 (10th Cir. 2017) ("Whether a plaintiff attempts to prove discrimination based on discrete acts taken by an employer or based on a hostile work environment, he must produce evidence from which a rational jury could conclude the employer took those actions *because of* his disability.") (emphasis in original). To the contrary, McDade asserts in her Complaint that the conduct that allegedly created the hostile environment was motivated by WCHD's desire to "cover up their misdeeds" and retaliate against her for blowing the whistle on alleged

illegal activity.[44] Even McDade's assertion that WCHD "weaponized allegations about her mental health" are followed immediately by the allegation they did so to "intimidate and silence her."[45] Because McDade alleges retaliation for unspecified illegal activity was the sole motivation for Dr. Thurgood's conduct, McDade's claim of disability-motivated harassment fails. *See Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522-23 (10th Cir. 2017) (citing *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010) (distinguishing between retaliatory and discriminatory motives under Title VII and concluding that retaliatory shunning by co-workers following sexual harassment complaint did not constitute sexual harassment); *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 758 (7th Cir. 1998) (concluding "cold shoulder" from co-workers in retaliation for plaintiff's participation in grievance process did not constitute sexual harassment).

---

[44] App. Vol. 1 at 7 and 93. *See also* App. Vol. 1 at 12 ("The Defendant engaged in harassment, threats and discipline which discriminated against and harmed the Plaintiff because she reported hospital misconduct to officials and through the chain of command"); *Id*. ("[WCHD] retaliated against [McDade] after she blew the whistle on their actions); App. Vol. 1 at 15 ("[WCHD] . . . weaponized allegations of mental health in an effort to intimidate and silence the Plaintiff"); and *Id*. ("[WCHD] constructively terminated [McDade's] employment…after an extensive bought [sic] of retaliation and hostile work environment.")

[45] App. Vol. 1 at 15. ¶ 73.

**B.     McDade's Complaint fails to demonstrate a plausible hostile work environment claim.**

Finally, McDade's hostile workplace claim also fails to allege facts to show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams*, 849 F.3d at 897 (alteration in original) (citation omitted).

In determining whether conduct in the working environment is sufficiently severe or pervasive, courts look to "all the circumstances" including the "frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The only incident of negative treatment alleged by McDade is the meeting with Dr. Thurgood on October 14, 2021. This conversation does not meet the standard of severe or pervasive. Before mentioning involuntary commitment, Dr. Thurgood agreed with McDade that she did not appear "manic."[46] After mentioning involuntary commitment, Dr. Thurgood immediately backed off and repeatedly confirmed that she couldn't make that assessment because she had a conflict of

---

[46] App. Vol. 1 at 9.

interest and was not experienced in Title 25 proceedings. [47] By the time the conversation ended, McDade knew Dr. Thurgood would not recommend or facilitate any effort to have her involuntarily committed.

Despite the fact McDade describes experiencing anxiety, fear, terror, and shock before, during and after the conversation, allegations about her subjective reaction are not adequate to state a claim. Rather, she must allege circumstances that, when considered objectively, meet the severe or pervasive requirement based the "perspective of a reasonable person in the plaintiff's position, *considering all the circumstances*." *Payan v. UPS*, 905 F.3d 1162, 1171 (10th Cir. 2018) (emphasis in original) (citations omitted). "The mere utterance of a statement which engenders offensive feelings in an employee would not affect conditions of employment to [a] sufficiently significant degree to violate Title VII." *Otero v. N.M. Corr. Dep't*, 640 F. Supp. 2d 1346, 1358 (D.N.M. 2009) (internal quotations and citations omitted). "[The Supreme Court has] made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment...." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The District Court properly determined that McDade's single conversation with Dr. Thurgood did not rise to the requisite level of severe or pervasive conduct.

---

[47] App. Vol. 1 at 10.

In response, McDade cites *Turnbull v. Topeka State Hosp*., for the proposition that a "single event, if extraordinarily severe, can alter the conditions of a working environment" to challenge the District Court's finding that her supporting facts are insufficient as they "pertain exclusively to the events that occurred on October 14, 2021."[48] *Turnbull*, 255 F. 3d 1238, 1243-44 (10th Cir. 2001). *Turnbull* is inapposite. *Id*. at 1242-44 (confirming a jury finding that "while there was only one incident, it was objectively abusive, dangerous and humiliating" where the psychologist was subjected to a sexually hostile work environment when she was suddenly attacked, undressed, digitally penetrated, bit and choked, repeatedly.)

The Supreme Court has stated that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal quotation marks omitted). This Court has stated that isolated incidents are sufficient to support a hostile work environment claim only when they are "threatening and severe" or "especially egregious or extreme." *Morris v. City of Colo. Springs*, 666 F.3d 654, 666-67 (10th Cir. 2012) (internal quotation marks omitted). Most incidents found to meet this standard involve some physical assault. *See id*. (summarizing *Turnbull*, 255 F. 3d at 1242-44 (finding that a hostile work environment had been created where a female psychologist was sexually assaulted by a male patient); *Lockard v. Pizza Hut, Inc*.,

---

[48] Aplt. Br. at 12-13 and App. Vol. 1 at 93.

162 F. 3d 1062, 1072 (10th Cir. 1998) (finding waitress was subjected to demonstrably severe and inappropriate conduct based on "filthy" comments by customers and one customer who "pulled her hair" and "grabbed her breast and placed his mouth on it.")

McDade makes no such allegation here against Dr. Thurgood. In contrast, her Complaint alleges explicitly that there was no immediate threat of involuntary confinement – Dr. Thurgood disavowed any willingness to support such an effort – and there is no allegation of any physical attempt to restrain McDade. In fact, McDade left the building on her own initiative shortly after the meeting. McDade's alleged facts "do not rise to the extreme level of conduct" required for an isolated incident to give rise to a cognizable claim for a hostile work environment. *Morris*, 666 F.3d at 667-68. The District Court properly dismissed this cause of action.

## IV.    McDade has failed to raise a plausible claim for constructive discharge.

McDade's constructive discharge claim suffers the same fate as her hostile work environment claim. "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sandoval v. Boulder Reg'l Commc'ns Ctr.*, 388 F.3d 1312, 1325 (10th Cir. 2004) (quotation omitted). "[W]e apply an objective test under which neither the employee's subjective views of the situation, nor her employer's subjective intent . . . are

relevant." *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004). McDade's burden is substantial and showing that the WCHD's conduct meets the definition of "tangible employment action" or "adverse employment action" is "not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but **intolerable**." *Id.* at 1270-71; *see also Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) (emphasis added) ("A hostile-environment constructive discharge claim entails something more [than conduct that amounts to harassment]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (stating that "[t]he bar is quite high in such cases"). Importantly, in constructive discharge cases "[t]he question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." *Tran*, 355 F.3d at 1270.

In support of her constructive discharge claim, McDade relies solely on the factual allegations supporting her hostile work environment claim. The Supreme Court has observed that when a constructive discharge case is based specifically on a hostile work environment, the plaintiff asserting this compound claim must allege

29

facts sufficient to show both that a hostile work environment existed, and that this environment was "so intolerable that a reasonable person would have felt compelled to resign." *See Pa. State Police*, 542 U.S. at 147. Because McDade failed to allege facts sufficient to establish a hostile work environment, she necessarily has failed to state a constructive discharge claim based on that environment. Even if the allegations about the meeting with Dr. Thurgood could plausibly support a hostile work environment claim, McDade has not alleged the additional facts necessary to plausibly allege her working environment was objectively intolerable. The District Court correctly dismissed this claim in light of the standard for constructive discharge claims.

## V.    McDade failed to exhaust her administrative remedies with respect to her discriminatory termination claim.

As argued above, "Title I of the ADA requires [McDade] to exhaust her administrative remedies before filing suit." *Jones*, 502 F.3d at 1183. McDade's Charge does not claim that her termination was because of a disability; rather, she asserts she was terminated in retaliation for engaging in protected opposition to Title VII and ADA prohibited discrimination. Her Charge specifically alleges:

> 9.    I engaged in protected opposition to Title VII and ADA prohibited discrimination.

> 10.    I suffered an adverse action by the employer subsequent to or contemporaneous with my protected activity.

a)     The employer has made working conditions so difficult that a reasonable person in my position would feel compelled to resign.   On October 14, 2021, I resigned.

11.     There exists a causal connection between my protected activity and the employer's action.[49]

These allegations may have exhausted administrative remedies for a claim of retaliation but do not do so for a discriminatory termination claim. Discriminatory termination and retaliatory discrimination are based on separate discrete acts prohibited by different sections of the ADA and Title VII and require independent exhaustion of administrative remedies. Compare the *prima facie* case of disability discrimination under the ADA, which requires a plaintiff to prove that (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered discrimination by an employer under circumstances that give rise to an inference that the termination was based on her disability. *See Felkins*, 774 F.3d at 650. On the other hand, a prima facie case of retaliation under the ADA requires: "(1) that [an employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012).

---

[49] App. Vol. 1 at 76-77.

McDade's Charge contains no allegations that WCHD discriminated against her due to her disability or religion by terminating her employment. As alleged in her Charge, her termination was an adverse action directly in response to unspecified protected activity. As a result, McDade did not exhaust administrative remedies with respect to any discriminatory termination claim, and the claim was properly dismissed.

## CONCLUSION

Defendants respectfully request this Court affirm the District Court's order dismissing McDade's Complaint.

## STATEMENT REGARDING ORAL ARGUMENT

As required by 10th Cir. R. 28.2(C)(4), the Defendant/Appellee believe oral argument is necessary as the Appellant's changing allegations and legal arguments may require further explanation and rebuttal.

Dated:  August 21, 2024.

Respectfully submitted,

/s/ Bradley T. Cave

Bradley T. Cave, P.C.
Janae E. Ruppert
HOLLAND & HART LLP
2020 Carey Ave., Suite 800
P.O. Box 1347
Cheyenne, WY  82003
Telephone: (307) 778-4200
bcave@hollandhart.com
jeruppert@hollandhart.com

**ATTORNEYS FOR APPELLEE WESTON
COUNTY HOSPITAL DISTRICT**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,651 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point.

Dated:  August 21, 2024.

/s/ Bradley T. Cave
Bradley T. Cave, P.C.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all parties are represented by counsel of record who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Bradley T. Cave
Bradley T. Cave, P.C.

## ECF CERTIFICATIONS

Pursuant to Section II(I) of the Court's CM/ECF User's Manual, the undersigned certifies that:

1.      All required privacy redactions have been made; and

2.      Hard copies of the foregoing required to be submitted to the clerk's office are exact copies of the document filed via ECF; and

/s/ Bradley T. Cave
Bradley T. Cave, P.C.

32614698_v4