

## Introduction

There is a considerable amount of effort required to show the actual truth/facts of appellant's case and evidence that has never rightfully been given, along with effort to show facts/evidence proving that appellant's former attorney, Cassandra Craven and other legal authorities, employees, and government officials were fraudulently conspiring together to gaslight, manipulate, misguide, and further violate or interfere with appellant's God given, constitution upheld rights.

It has become much clearer to the Appellant, over the course of the past 5 months since this appeals process began that Mrs. Craven, has been fraudulently, misrepresenting, manipulating her as opposed to truly representing her as in the appellant's best interest.  The appellant did report all initial claims, illegal activity and violations to every hospital board member, the Weston County Sheriff Brian Colvard, the EEOC, the Wyoming Department of Workforce Services, and specifically, Kendrick Ladd, a Wyoming Department of Labor investigator. All of these Individuals/agencies along with the lower courts judge who dismissed the

2

appellant's case, are all complicit as well in conspiring together in further violating, interfering, denying appellants constitutional upheld rights, further abandoning laws, and attempting to keep what the original players in the Weston County Hospital did, unconstitutionally to appellant specifically, covered up or from appellant's truth, facts, and evidence from ever seeing the light of day.

When I/Amanda McDade began reporting all of these violations towards myself and many others, until where I am currently in this process, all legal procedures and guidance appellant has been led to follow through the legal/justice system has been followed. The only thing the appellant has done is to naively trust this system and attorney she retained, who she, along with most Americans believe they should rightfully be able to trust, as all have taken an oath to uphold the laws, justice, the Constitution of the United States, and the rights of the natural born people of this country. Rights that most importantly include our God granted inalienable rights to life, liberty, and the pursuit of happiness. Appellant retained this attorney to represent her in this matter because as all courts, including this court recommend that we seek the professional legal help and advice of attorney and as stated in the

**Wyoming Rules for Code of Conduct:**

**"Almost without exception, clients come to lawyers in order to determine their rights, and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience lawyers know that almost all clients follow the advice given, and the law is upheld."**

Not to mention the information or response the appellant received from this 10th

Circuit Court of Appeals' court clerk, when appellant reached out to her by email

**Case No. 24-8031**         **Amanda McDade v.**         **Weston County Hospital**

regarding appellant's mediation, that her former attorney did not give appellant

the option to be involved in and following this whole situation along with other

information appellant was not honestly being told by Mrs. Craven, appellant was

hoping to be able to receive either a transcript or some kind of documentation

that would let her know what was truly discussed in the appellant's own

mediation.

Amanda McDade/Appellant to Jane_Castro@ca10.uscourts.gov on July 30, 2024:

**"I was not included in the mediation as my attorney did not give me the option
to be included and said she would just be in there to represent me. I am just
wanting to have access to full disclosure that I am able to of the proceedings for
my records and would greatly appreciate any help you can provide."**

Response email from Jane_Castro@ca10.uscourts.gov:

**"Dear Ms. McDade, Because you are represented by counsel, the court cannot
take any action on your email. Please consult with your attorney regarding these
questions. We regret we cannot be of greater assistance."**

It should not be used against or held against the appellant that she trusted the

attorney she retained and who marketed herself as an honest, God loving,

conservative, who stands up against corrupt government. Unbeknownst to myself

and surely many who hire attorneys to help them navigate the legal system, laws,

and specifics of their cases, this attorney clearly had more access to my own case

information, more power, and ability to determine how my case unfolded.

Mrs. Craven clearly is the one who produced all of the legal documents in

appellant's case including original lawsuit claim that was done fraudulently and unlawfully. To learn from this court that I/appellant could not access my mediation information was absolutely shocking, disheartening, and mind boggling as the appellant, who had never willingly or knowingly given this right or any of my rights away to anyone, attorney or otherwise.

Mrs. Craven is also the one that produce the claims filed in appellant's original lawsuit along with intentionally placing the claim attached to the Wyoming Government Claims Act. The WGCA is repeatedly brought up by the appellee's attorney and Judge Skavdahl as a defense and tactic to be used against the appellant to potentially get her lawsuit dismissed unconstitutionally even though the WGCA never pertained to appellant's claims based on the United States Constitution, "The Supreme Law of the Land."

According to Article VI of the United States Constitution as well as Article I of the Constitution of The State of Wyoming, the Constitution of the United States is in fact the Supreme Law of the Land. It seems as if the Judge, Cassandra Craven, the Appellee's attorneys, Weston County Hospital District and its employees, the EEOC, the Wyoming Department of Workforce Services, the Weston County Sheriff, and other individuals who are bound by oath to know this, as well as the law have chosen to ignore this very important fact. Directly from

**Article VI paragraph 2: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding." (state judges in every individual State of the United States are obligated to uphold the provisions of all national Laws of the United States made under the authority of**

**Case No. 24-8031**           **Amanda McDade v.**        **Weston County Hospital**

the U.S. Constitution, regardless of whether contrary or conflicting provisions exist in the constitution or laws of their particular state.)

There has never been an honest opportunity for appellant to respond with her truth, facts, evidence and genuine response that should have been given by former attorney, especially to the judge's dismissal motion from appellant's case. Appellant will also be including evidence with this response brief that should have been included and was advised by the appellant to Mrs. Craven to include but she did not, instead only manipulated her into believing there was a legal method based on her knowledge and experience, as to why she was not including it, with her main line being "she just knew this case would never be dismissed and we wanted to wait until the discovery process to include much of the evidence and documentation."

Statement made and produced by Mrs. Craven in initial complaint:

 **"Moreover, the Defendant is a governmental entity under the Wyoming Governmental Claims Act. Certainly, the government cannot threaten to strip us of our civil liberty and freedom when their illegality and ethics are called out through the proper process. To silence the voice of those who speak against you and threaten to place them in an involuntary mental health hold, as a governmental employer, is nothing that should ever occur in the free United States of America."**

Appellant absolutely agrees with this statement except for when Mrs. Craven clearly contradicts herself with claiming this act, on behalf of the Weston County Hospital, falls under the Wyoming governmental claims act, while at the same time stating the obvious, that this was in fact a complete violation of appellant's God granted and U.S. Constitution upheld rights to life, liberty, and pursuit of happiness. Mrs. Craven also and as anyone of any legal knowledge or experience

Case No. 24-8031          Amanda McDade v.          Weston County Hospital

should know, especially as an educated attorney, licensed in Wyoming is obligated to know that this statement made by her is blatantly false.

**"The claim was in compliance with the signature and certification requirements of article 16, section 7 of the Wyoming Constitution." (page 3 number 14 in Appellant's original lawsuit)**

Appellant will show facts and evidence for the record as to why or how the Wyoming Governmental Claims Act never applied to her case to begin with.

**Wyoming Statute 1-39-104: Granting immunity from tort liability; liability on Contracts; exceptions.**

> **(a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1-39-105 through 112, 122, and 123...**
>
> **-It also states in the document referenced under 1-39-04 that these Governmental entities and public employees are "supposedly guaranteed" immunity only if it is determined they were acting within the scope of their duties.**

It should have been very clear and evident to not only Mrs. Craven who asserted appellant's state claims under the WGCA, but also to Judge Skavdahl who very clearly showed biased and favoritism towards the Appellee, an obvious governmental entity, when he used this claim to dismiss my case, it did not and does not constitutionally apply to appellant's situation or case. With the majority of her claims being brought under 42 U.S.C. section 1983, that the WGCA does not apply to nor are any protections or immunities provided to governmental entities or their public employees.

**"Section 1983 was created to protect rights guaranteed by the United States Constitution, and even though state courts have concurrent jurisdiction over**

section 1983 actions", (Board of Trustees v. Holso supra note 107) "states cannot create defenses to the Federal Civil Rights Acts." (McLaughlin v. Tilendis, 398, 1968)

State sovereign immunity does not extend to cases where a plaintiff alleges the

state's action is in violation of the federal or state constitutions.

 "Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will. Moreover, neither the common law nor a state statute can supersede a provision of the federal or state constitutions." (Department of Revenue v. Kuhnlein, 646 So.2d 717, 721 (Florida Supreme Court 1994)

"Only people are sovereign and have rights; bureaucrats, in their capacity are not sovereign and have no rights, they have authority given by the people and are subject to the statutes. The state cannot diminish rights of the people." (Hurtado v. People of the State of California, 110 U.S. 516)

Nor can they claim to have absolute immunity from liability of any tort claim, or

claim otherwise such as appellant's, especially since it is not a tort claim.

"Where rights secured by the Constitution are involved there can be no rule making or legislation which would abrogate them." (Miranda v. Arizona, 384 U.S. 436, 491)

Also provided is further evidence and Documentation in discussions between

Mrs. Craven and appellant/Amanda McDade where she repeatedly lied to

appellant over the course of two years about the WGCA, its relevance to

appellant's case, and never once told her about or advised her to fill out the

WGCA Notice of Claim. If it was relevant and had she done so this notice of claim

would have been served to the appellee correctly and on time. Mrs. Craven

instead manipulated appellant into believing that to file a WGCA notice of claim as required we would have had to file a lawsuit in order to do this correctly.

As stated to Mrs. Craven by email from Amanda McDade on 9/5/2024:

**"Why did you and have you repeatedly stated to me that to file a valid and timely Notice of Claim that followed the procedures of the WGCA, I or "we would have had to file an earlier lawsuit (notice of claim)", quoted from your statement in this email I am responding to and has been told to me by you many times throughout the last two years, when this is in fact not true and as well educated/experienced as you are, I'd say it's safe to assume you had to have known this was not true all along. What could possibly even come close to you justifying this clear and evident, on many occasions misleading, misrepresenting, and dishonesty on your part? Please explain to me how on earth you as the well-educated/experienced and should be well versed in the Wyoming Governmental Claims Act statute, process, and procedures as well as both the Wyoming Constitution and United States Constitution could have innocently got all of this so wrong and misled me so far away from the facts both legal and ethical here repeatedly? How could you or would you even plan to get up in front of any court/judge or jury as representation for me with you being the one at fault for this aspect going so wrong, NOT ME and effectively argue against any of this information I provided here?"**

Mrs. Craven's response:

**"As to some legal points: On the governmental claims act items we have discussed this in the past. If you remember, we would have had to file an earlier lawsuit (notice of claim) on that and we contemplated and even drafted some items for it but ultimately held off."**

Appellant has included a WGCA notice of claim form for reference in documentation.

**Wyoming Rules of Professional Conduct for Attorneys**

**Rule 1.3. Diligence**

Case No. 24-8031          Amanda McDade v.          Weston County Hospital

**A lawyer shall act with reasonable diligence and promptness in representing a client. [1] A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. [3] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interest often can be adversely affected by the passage of time or the change of conditions; in the extreme instances as WHEN A LAWYER OVERLOOKS A STATUTE OF LIMITATIONS, THE CLIENT'S LEGAL POSITION MAY BE DESTROYED.**

In response to Judge Skavdahl's dismissal motion and is very relevant to Appellant's appeal because it is very clear throughout the entire dismissal motion that he is very accusatory towards the plaintiff, slanders, insinuates plaintiff is dishonest, insinuates that plaintiff is not intelligent, shows obvious biased/favoritism towards the defendant, and instead of upholding his oath to office uses his position to abuse his power while showing a reckless disregard for the law and United States Constitution in the dismissal motion.

**"A judge's job was to find and apply the law, not make it, the "opinion of the judge" and "the law" were not considered "one and the same thing." (1 W. Blackstone, Commentaries on the Laws of England 71, 1765, Blackstone. Citation from the Supreme Court's Ruling in Loper Bright Enterprises v. Raimondo pg. 2, Gorsuch, J., concurring 603 U.S. pg. 2 2024)**

Judge Skavdahl on pg. 2 of his Dismissal motion, **"Dr. Thurgood told McDade the hospital's management was considering having her involuntarily committed, which McDade construed to Mean a Title 25 hold."**

Judge Skavdahl's ignorant, slanderous comment shown here is one of many made throughout the dismissal motion. It was pretty arrogant and unnecessary of him to make such a statement assuming that the appellant was too dumb,

Case No. 24-8031              Amanda McDade v.        Weston County Hospital

uneducated, and did not have the common sense enough to know that in
Wyoming being involuntarily committed and placed on a Title 25 hold mean the
exact same thing. It is also well outside of his scope of duties and authority as a
Judge when appellant's actual proof/evidence had not been seen by him, to make
such accusatory, slanderous, and degrading assumptions about what the
appellant does or doesn't know. Appellant very well knows that a
Title 25 and involuntary commitment is the exact same thing, as unbeknownst to
the judge, who took it upon himself to construe he knew anything factual
about the appellant, she worked for Northern Wyoming Mental Health for a year
prior to working at the hospital.

Appellant's charging document with the EEOC is much different than the
fraudulent document produced by the Wyoming DOL and was filed
on10/30/2021. included with brief is the document as evidence. It is appellant's
belief that the courts, who are called to verify facts, evidence, truth, and to
uphold the rights of the people along with the laws of the U.S. Constitution, they
should be more than willing to look at and one would think be obliged to look at
in any case.

**Original EEOC Charging/Complaint Document Statement**

**I held this position until October 14, 2021 when my employers actions left me no
choice but to resign.**

**Prior to my employer issuing a mandate for the Covid vaccine, I made clear to
others including the Director of Human Resources that I would be requesting an
exemption to the vaccine on the basis of my sincerely held Christian beliefs. It
was unclear if my employer would be granting religious exemptions to the Covid
vaccine if it was mandated. On or around September 15, 2021 I escalated my
concerns about the vaccine exemption and other issues to the President of the**

Case No. 24-8031        **Amanda McDade v.**      **Weston County Hospital**

governing board. On or around October 14, 2021, a staff doctor came to my office for the purpose of assessing me for a 72-hour commitment. My employer had no grounds for believing I was a danger to myself or others and I believe this was an act of retaliation.

I believe I was discriminated because of my religion (Christian), and retaliated against for opposing discrimination in the workplace, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The appellant never once stated to or agreed with the statements that were fraudulently placed in the charging document that was put together and produced by Dana Maestas. The specific statements referred to are, my disability substantially limits a major life activity and the employer failed to make a reasonable accommodation for me. Appellant told the WY DOL that she rightfully believed WCHD discriminated against her disability by using their knowledge of it to weaponize it against her.

Emails between appellant and Dana Maesta's/WY DOL:

**April 8, 2022: Hi Dana, I received the charge of discrimination sent to me and there are a few things I did not agree with on it. Regarding number 2 that says my disability substantially limits a major life activity I have never stated that it does, because it does not limit any major life activity for me. Also I don't agree with number 4 that states the employer failed to make a reasonable accommodation for me unless this is in regards to the flu or covid vaccines. I did not ever request an accommodation for my ADHD. As for the rest of the document I do agree. I just wanted to address these statements as I am not a dishonest person and do not want to be perceived as so. I do see that this document is time sensitive so I will get it signed and sent back as soon as I get the updated document. Thanks for your help, I appreciate it. Thanks, Amanda McDade**

**April 9, 2022: Good afternoon, Amanda, You indicate you do not agree with No. 2 on your "Charge of Discrimination." Our office has a workshare agreement with the EEOC. The EEOC requires us to use what are called prima facie elements**

**Case No. 24-8031**          **Amanda McDade v.**      **Weston County Hospital**

when investigating cases. When someone is alleging disability discrimination one of the prime facie elements is No. 2. In order to be disabled under the Americans with Disabilities Act, and individual must have a disability that "substantially limits a major life activity; therefore, this is why No. 2 is part of the prima facie elements for disability.

You indicate you do not agree with No. 4. Another one of the prima facie elements for disability is No. 4.

All the prima facie elements that are listed on your "Charge of Discrimination" is what our office will be investigating and making a determination based on our findings and case law. I hope this clears everything up for you. Dana Maestas

U.S. Equal Employment Opportunity Commission:

**How does the ADAAA define "disability?"**

-a physical or mental impairment that substantially limits one or more major life activities or;

-a record of a physical or mental impairment that substantially limited a major life activity ("record of"), or;

-when a covered entity takes an action prohibited by the ADA because of an actual or perceived impairment that is not both transitory and minor ("regarded as"). {Section 1630.2g} (Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008, U.S. EEOC, (2011)

Dana Maestas/WY DOL told appellant obvious false information but also coerced/strongarmed her into signing this fraudulently produced document that she did not agree with under the guise in order to file the complaint, she had to do it this way or it wouldn't have been done. This whole fraudulent and intentional violation made in this case, makes this whole argument of whether it was reported correctly or not (although was reported correctly) to the EEOC/WY DOL and the arguments involving the charging document null and void.

These acts violate not only the U.S. Constitution but the Administrative

**Case No. 24-8031**              **Amanda McDade v.**          **Weston County Hospital**

Procedures Act of 1946. Appellant's former attorney, did know about this situation from the time that she was retained in June of 2022 but chose to ignore the obvious fraudulence of the document, and that the appellant was clearly coerced under duress into signing it. Mrs. Craven manipulated the appellant into believing there was a legal method as to why she had not addressed it with the WY DOL. Both the EEOC and Wy DOL were given all of appellant's evidence that included well over 100 pages of indisputable evidence, but chose to disregard all of it, continued to conspire with the original defendant in this matter and did delay the process along with cover up the unlawful and unconstitutional activity for them.

**Administrative Procedure Act of 1946 (Public Law 404 79th Congress)**

**(e) Scope of Review-So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right**

**Construction and Effect**

**SEC. 12. Nothing in this Act shall be held to diminish the constitutional rights of any person or to limit or repeal additional requirements imposed by statute or otherwise recognized by law. If any provision of this Act or the application thereof is held invalid, the remainder of this Act or other applications of such provision shall not be affected.**

**"Rather than insulate adjudication from power and politics to ensure a fair hearing "without respect to persons: as the federal judicial oath demands, 28 U.S. C. 453, Chevron deference requires courts to "place a finger on the scales of**

14

Case No. 24-8031          **Amanda McDade v.**          **Weston County Hospital**

justice in favor of the most powerful litigants, the federal government."
**Buffington, 598 U.S., at _ (slip op., 9)** It sure seems as though this is what has

*(P. Hamburger, Chevron Bias, 84 GEO Was. L. Rev. 1187, 1212 (2016)*

taken place throughout the appellant's entire case and pursuit of justice.

*→ Supreme Court's ruling in Loper Bright Enterprises v. Raimondo, Gorsuch, J. Concurring 603 U.S. (2024)*

Appellant has never received any investigation or honest attempt from the

EEOC/WY DOL, or any government official, the Weston County sheriff Brian

Colvard, or anyone who's duty it is to provide this even over 3 years after this

whole nightmare began.

While asserting, showing biased, and slandering the appellant, Judge Skavdahl

cites this case, along with statements that were dishonest as his reasoning and

validation to dismiss appellant's claims.

**"The EEOC charge must contain facts concerning the discriminatory and
retaliatory actions underlying each claim." Delsa Brooke Sanderson v. Wyo.
Highway Patrol, (10ᵗʰ Cir. 2020)** (pg. 13 of dismissal motion)

This statement shows that the **charge** must contain facts and supporting evidence,

which appellants very well did along with a litany of documentation, but a charge

and a charging document that his arguments are being based on are much

different as well as the requirements for them.

EEOC's website:

**"When a charge is taken based on disability, the nature of the disability shall not
be disclosed on the face of the charge." (U.S. EEOC/FEPA Model Worksharing
Agreement, II. Filing of Charges of Discrimination, D.)**

Judge Skavdahl also falsely claims on page 14:

**"Unlike the complaint, the charge does not allege WCHD was aware plaintiff's
health diagnosis."**

Appellant's charge repeatedly states in documentation provided to this

**Case No. 24-8031**            **Amanda McDade v.**        **Weston County Hospital**

court, that WCHD was aware of appellant's health diagnosis but the

charging document referred to does not. The charging document was fraudulently

produced to begin with and the charging document does NOT require all of the

particulars that Judge Skavdahl claims it does. It was never the appellant's choice

to not include her health diagnosis in any legal documents. This information was

omitted on behalf of the Wyoming DOL as well as by fraudulent production of

legal documents by appellant's former attorney.


**In more of the 20-minute recording between the appellant and Dr. Thurgood it
shows that the defendant/appellee knew about appellant's disability and used
the regarded as prong of the ADAA of 2008 to weaponize it against her.**

**Dr. Thurgood:** "I mean they know a little bit from I guess what you've disclosed on
Facebook and what not and so there is some information they're aware of that
you have volunteered."

**Amanda McDade:** "Yeah but it's not anything that infers that I have mania, I've
lost my mind or otherwise. I am voicing my own opinion that I am allowed to and
everybody is allowed to have their own opinions."

**Dr. Thurgood:** "Right, sure. I think from what they've, the information they were
garnering from that is you know because you specifically I guess you mentioned
Vyvanse, you could google that and find out that mania and psychosis and this
that and the others are potential side effects.

**Amanda McDade:** "Right but the reason I even put that stuff on there it was
because it has helped me so much, I wanted to help other people and now they
are trying to use that against me."

On page 13 of the dismissal motion it states, **"WCHD argues plaintiff
nonetheless cannot pursue a "regarded as" disabled claim because she failed to
exhaust her administrative remedies on this point." (Judge Skavdahl)**

The appellant was never given an honest opportunity to exhaust any

**Case No. 24-8031**                **Amanda McDade v.**        **Weston County Hospital**

administrative remedies on any point period. There has never been an investigation, or due diligence provided to appellant in this case at all. Judge Skavdahl and all other legal/governmental parties involved knew this as well, yet he still chose to dismiss my whole case unconstitutionally. The original EEOC charging complaint was filed on 10/30/2021 and the one fraudulently produced by the WY DOL was filed on 4/11/2022. Appellant's right to sue letter was not requested until 7/14/2023. It was only requested after appellant asked her former attorney to do so much sooner and after they had all evidence and case for 459 days. This was well after the 180 days a right to sue can be requested so they were given more than enough time to act on case/allegations but instead chose to sit on it causing appellant even more distress, anxiety, and suffering in their overly extensive delay.

Judge Skavdahl's dismissal motion, **c. Hostile Work Environment**:

**"Like much of Plaintiff's Complaint, this claim suffers from too little supporting factual averments to cross the line from speculation to plausible. Plaintiff repeatedly alleges she was exposed to a hostile work environment, but only supporting facts she alleges pertain exclusively to the events that occurred on October 14, 2021."**

Even on its face this statement is dishonest as the plaintiff's former attorney, who produced all legal documents including the initial lawsuit claim states numerous hostile or retaliatory actions against the plaintiff. Judge Skavdahl chose to ignore them while claiming,

**"Plaintiff made no mention of other retaliatory/hostile work environment incidences."**

A transcript from the horrifying scenario appellant endured with Dr.

Thurgood was included in the original suit as well as an interview that Dr. Sara

17

Thurgood herself, gave to The Cowboy State Daily after appellant's lawsuit was filed and made public.

**'I Was A Pawn'**

**Thurgood in her own Monday interview told Cowboy State Daily that she was a pawn in all this, and she didn't know what money mismanagement concerns McDade had raised against the hospital.**

**For Thurgood, it started when a nurse and a hospital administrator asked her to check on McDade; they claimed to be concerned for McDade's mental health in light of recent public statements McDade had made.**

**"I felt extremely uncomfortable by what I was asked to do. They were wanting me to declare her either a danger to herself or other people – that's what you have to do to Title 25 someone," said Thurgood. "I did not see that in her."**

**Reflecting on the 2021 meeting, she said, "As a physician, I've never been asked to do something so odd." (Cowboy State Daily, Claire McFarland, 2023)**

Judge Skavdahl also showed biased and imparted his unjustified opinion, claiming even if all appellant had endured was being threatened to be put on an involuntary commitment, according to him did not justify a hostile work environment and was accusatory towards appellant as being dishonest with this citation beginning on pg. 18 of the dismissal motion.

**"A plaintiff claiming hostile work environment must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (quoting Penry v. Fed. Home Loan Bank of Topeka, 10th Cir. 1998)**

Here he uses a very non-comparable case to try and validate himself in stating appellant's much more permeated with intimidation and horrifying situation was even close to comparable. It was not!

In Appellant/Plaintiff's original lawsuit pg. 4, Facts Common to all Claims for Relief

18

there are many more retaliatory occurrences towards the appellant listed.

**Whistleblower Policy: (Meaning the WCHD whistleblower policy appellant has included)**

**56. This agreement promised that meetings and identity disclosed with the board president would remain confidential. Confidentiality by the defendant was breached.**

**62. "This conspiracy was motivated by a class-based invidious discriminatory animus under the ADA of 1990, as amended and the Wyoming Fair Employment Practices Act of 1965." (Cassandra Craven)**

Specifically, where Mrs. Craven claims conspiracy against appellant under 42 U.S.C. 1985 and again attaches the WGCA to it, this is clearly a fraudulent act by this attorney who very well should have known this was not correct.  Also, obvious in the wording regarding legal statutes used here is language that appellant did not come up with or understand but believed she could trust this attorney who was obligated to be competent and to honestly represent her.

Plaintiff/appellant has been warranted a Constitutional right from the start of reporting these claims. The appellant had/has the right to have this seen/heard in a trial by jury and to potentially receive the justice deserved but has not been given.

**"The Seventh Amendment protects that right of trial by jury in civil cases as well. It provides that in suits at common law, where the value in controversy shall exceed twenty dollars…" (U.S. Constitution Amendment VII)**

**"And what about civil juries? "The jury trial, brings with it an open and public discussion of all causes and excludes secret and arbitrary proceedings." (Letter from a Federal Farmer, Jan. 18, 1788; in id.; at 320 (federal farmer 15).**

**"The participation of ordinary Americans "drawn from the body of the people" serves another function, too: "if the conduct of judges shall tend to subvert the**

laws, and change the forms of government, the jury may check them." (Ibid SEC v. Jarkesy, Supreme Courts Ruling, Gorsuch, J., concurring. 603 U.S. pg 9 2024)

"Why should Article III, the Seventh Amendment, or the Fifth Amendment's promise of due process be any different? None of them exists to "protect judicial authority for its own sake." (Oil States, 584 U.S., at 356. Gorsuch, J., dissenting) They exist to "protect the individual." (Bond v. United States, 564 U.S. 211, 222 (2011)

"And why would a constitution drawn up to protect against arbitrary government action make it easier for the government than for private parties to escape its dictates?" (SEC v. Jarkesy, Gorsuch, J., concurring June 27, 2024) "Again, what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." (SEC v. Jarkesy, Supreme Court Opinion of the court pg. 22)

### Conclusion 18 U.S.C. 241 Conspiracy against Rights/18 U.S.C 242 Deprivation of Rights Under the Color of Law

Although appellant's original suit claimed the conspiracy against rights fraudulently under 42 U.S.C 1985 they should have been claimed and still are protected under both 18 U.S.C 241 and 18 U.S.C 242.

18 U.S.C. 241: is a federal law that makes it illegal for two or more people to conspire to injure, threaten, or intimidate someone in the United States.

18 U.S.C. 242: makes it a crime for any person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. For the purpose of Section 242, act under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, If the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. It is NOT necessary that the crime be motivated by ANIMUS toward the race, color religion, sex, handicap/disability, familial status or national origin of the victim.

The actions committed toward appellant demonstrate a deprivation of the rights,

Case No. 24-8031                    **Amanda McDade v.**        **Weston County Hospital**

privileges, and immunities secured and protected by our Constitution.

Too weaponize the very well-known about, ADA recognized disability should be the highest offense of an employer. This horrifying scenario the appellant was forced to endure did threaten life, liberty, and pursuit of happiness and still affects the appellant physically, mentally, and emotionally to this day along with everything else she been forced to endure in the last 3 years. If the government when you call them out for corruption, attempts to have you detained through an invalid mental health psychiatric hold and this court upholds the lower courts dishonest decision to dismiss/ignore it this would be a continuance of the violations, interference, and injustice from the "legal/justice system" the appellant has received thus far.

**"An unconstitutional act is not law. It confers no rights, it imposes no duties, it affords no protections, it creates no office. It is in legal contemplation as inoperative as though it has never been passed." (Norton v. Shelby County, 118 U.S. 425 (1886).**

**"The rights of the individual are not derived from governmental agencies, either municipal, state, or federal, or even from the Constitution. They exist inherently in every man, by endowment of the Creator, and are merely reaffirmed in the Constitution. The people's rights are not derived from the government, but the government's authority comes from the people. The Constitution but states again these rights already existing, and when legislative encroachment by the nation, state, or municipality invade these original and permanent rights, it is the duty of the courts to so declare, and to afford the necessary relief." (City of Dallas, et al. v. Mitchell, 245 S.W. 944, 945-45, 1922)**

Appellant has every intention of filing individual complaints against those named here but according to the ABA:

**Rule 2.15: Responding to Judicial and Lawyer Misconduct of the American Bar Association as well as other Judicial review statutes I fully believe this court has the duty to report this as well.**

Case No. 24-8031          Amanda McDade v.          Weston County Hospital

Rule 2.15 ABA [1] Taking action to address known misconduct is a judge's obligation. Paragraphs (A) and (B) impose an obligation on the judge to report to the appropriate disciplinary authority the known misconduct of another judge or a lawyer that raises a substantial question regarding the honesty, trustworthiness, or fitness of that judge or lawyer. Ignoring or denying known misconduct among one's judicial colleagues or members of the legal profession undermines a judge's responsibility to participate in efforts to ensure public respect for the justice system. (American Bar Association Rule 2.15)

**Constitution Annotated Analysis and Interpretation of the U.S. Constitution Article III S1.3 Marbury v. Madison and Judicial Review**

**Article III, Section 1:**

The judicial Power of the United States, shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish. The Judges, both of the supreme and inferior courts, shall hold their offices during good behavior, and shall, as stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.

**Conclusion**

**Questions for this court are:**

1. **Is this court going to continue to keep up the charade, as the lower courts and appellee's attorney did in pretending that appellant/Amanda McDade is the one guilty of "changing allegations and legal arguments" as the appellee's attorney claimed in their statement regarding oral argument? Or is this court going to honestly look at what the actual appellant in this case has presented to the courts after realizing her former attorney was doing anything but representing her honestly and acknowledge the appellant's former attorney is the one clearly guilty of making the previous legal proceedings/documents look and sound absolutely ridiculous, unintelligent, incorrect?**

Case No. 24-8031                    Amanda McDade v.            Weston County Hospital

2. Is this court going to choose to look at the facts as produced in evidence by the appellant when making their decision in this case or are they going to continue to violate, interfere with, and deny the appellant her many God granted rights and otherwise constitutional rights that have thus far been withheld, initially by the appellee along with many others in her quest for justice and accountability for those who are guilty of this injustice?

**Case No. 24-8031**              **Amanda McDade v.**        **Weston County Hospital**

Dated and sent by USPS Certified mail on 10/07/2024 by Amanda McDade

Signed by Amanda McDade/Appellant

**Case No. 24-8031**          **Amanda McDade v.**          **Weston County Hospital**

### Certificate of Compliance

Prior to completing Table of Contents, Table of Authorities or this Certificate of Compliance but including appellants title page and signature page the word count for this response brief was at 6,490 and font size is 14. According to the letter appellant received stating previously submitted brief contained too many pages or exceeding the type-volume limit as the reason it was denied, this reconfigured brief and word count should meet the specifications under Fed. R. App. P. 32(a)(7)(B)(ii) stating reply brief's must be no more than half of initial brief word counts, which are 13,000 words.

In this letter received by the appellant it also stated the corrected brief must have an updated certificate of service (if required; see 10th Cir. R. 25.4)

According to 25.4(c): When the clerk dockets a paper submitted by a nonelectronic filer, for purposes of Federal Rule of Appellate Procedure 26(c) the notice of docket activity (NDA) issued via the court's ECF system shall constitute electronic service on registered ECF users and other parties who have consented to electronic service in the case. The nonelectronic filer need not include proof of service for service mad via the NDA.

If appellant is understanding Rule 25.4(c) correctly it is not necessary to have an updated certificate of service and appellant does see where appellee's attorneys were cc'd in letter sent to appellant on 10/2/2024 regarding above information as well so they are aware of what transpired with initial response brief by the appellant being rejected.

There was also no mention regarding appellant's evidence submitted with her response brief but as none of appellant's evidence/proof/facts has ever been acknowledged by the WY DOL/EEOC nor was it ever requested or looked at by the judge in the lower courts appellant fully believe it should be admissible now. This evidence is pertinent in showing facts/proof regarding the appeals process and dishonesty of former attorney and has relevance to the lower courts unconstitutional dismissal.

Signed by Amanda McDade/Appellant on 10/7/2024   *Amanda McDade*